# CHARLES W. COLEHOUR *et al.*

*v.*

# WILLIAM F. COOLBAUGH *et al.*

1. PARTNERSHIP ACCOUNT — *statement in decree as to payment of debts.* On bill to settle a partnership in a land speculation, and state the account, where the parties have had a previous settlement, the court will adopt such settlement as the basis upon which to adjust the subsequent dealings; and where there is no dispute but that the parties are owing $16,000, $4000 of which all were to pay in equal proportions, and one to pay $5000 of the remaining $12,000, and the other two $7000, it will not be material that the decree finds the latter sum to be owing to a certain firm, the main thing being the proportion each is to pay.

2. SAME — *division of notes.* Where the court, in adjusting a partnership dealing in which there are outstanding debts binding upon all the parties, but of which one is required to pay $5000 and the other two $7000, and the remaining $4000 by all in equal portions, and the court requires security to be given, the first to the other two for the payment of his part, and the other two security to the first for the payment of their separate parts, it was *held,* there was no error in requiring the division and surrender of the notes held by one of the parties belonging to all, before payment of the debts.

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Messrs. LEFFINGWELL & JOHNSON, for the appellants.

Mr. MELVILLE W. FULLER, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This record presents no question of law. The only controversy between the parties arises from the manner in which the circuit court stated the account which was the subject matter of the litigation.

In June, 1871, appellant Charles W. Colehour and the firm of Grant & McLain purchased, on joint account, sixty acres of land, in Cook county, of one Seipp, for the sum of $50,000, one-third of which was paid down, and notes and mortgage on the premises given for the balance, payable in equal annual installments, in one, two and three years.

At the time of the purchase, by agreement of the parties, the land was conveyed to Wm. H. Colehour, who held it in trust for his brother, C. W. Colehour, and Grant & McLain. The first payment was made with money borrowed, a part by Grant & McLain, who gave their notes indorsed by C. W. Colehour, and the balance by Colehour, who gave his notes indorsed by Grant & McLain.

In September, 1871, the parties sold forty acres of the land, for $50,000, to one Guyton, who paid in cash $12,500, and assumed to pay on the notes held by Seipp for the purchase money $24,000, or upon each of the notes, as they became due, $8000, and interest on that sum, and for the balance of the purchase money he gave his six notes of $2500 each.

Shortly after this sale, C. W. Colehour and Grant & McLain had an accounting and settlement between themselves of all moneys received and paid out, and all payments, advances, expenses and commissions, and all surplus money on hand was divided, and the six notes given by Guyton were also divided.

The $16,000, which had been loaned to make the first payment on the land, was not paid, but, in the settlement, the balance remaining due to Seipp was to be paid equally by each of the parties as the same became due, which was accordingly done.

The remaining twenty acres of the land was sold about the 1st day of April, 1872, for $25,500, to Nelson Thomasson; $8500 was paid down to C. W. Colehour, and notes, secured by mortgage, were given for the balance of the purchase money. · It will not be necessary to go back of the settlement of September to determine the rights of the parties. The complainant's amended bill contains the following allegations:

That, about the 1st day of April, A. D. 1872, the remaining twenty acres of said land was sold to said Thomasson, and that prior thereto, and after the sale of said forty acres to Guyton, said Charles W. Colehour and Grant & McLain had an accounting and settlement between themselves of all moneys received and paid out, and all payments, advances and com-

missions; that, on account of money borrowed, there was due, or about to become due, $4000, which had been obtained of the German-American Bank, and $12.000, which had been obtained of Henry Clews & Co., of New York, and in said settlement it was mutually agreed between said Charles W. and Grant & McLain that the sum of $4000 should be paid by them jointly out of the moneys arising from the sale to be made of the remaining twenty acres of land, and that the said Charles W. should pay $5000 and Grant & McLain should pay $7000 of the amount due to Henry Clews & Co.; and thereupon Charles W. and Grant & McLain, after deducting all payments, commissions on purchase and sale, and equalizing all advances, divided the surplus of money on hand, and also the six notes due from Guyton, leaving the said $4000 due the German-American Bank and the $12,000 due Henry Clews & Co. still unpaid and outstanding.

It is conceded, by appellants, that the averments are true, except they claim there was not, at that time, due Henry Clews & Co. $12.000, but only $5000, and denying the alleged agreement that Colehour was to pay any part of that indebtedness. They concede there was due the German-American Bank $4000, and insist there was also, at that time, due the Union National Bank of Chicago $7000.

The court, however, in its decree, found that, on account of money loaned, there was due, or about to become due, $4000, which had been obtained of the German-American Bank, and $12,000, which had been obtained of Henry Clews & Co. of New York, and, in the settlement and accounting, it was mutually agreed by and between the defendant Charles W. Colehour, and Grant & McLain, that the $4000 should be paid by them jointly, and that Charles W. Colehour should pay $5000, and Grant & McLain should pay $7000 of the amount payable to Henry Clews & Co.

This finding of the court is the main error relied upon by appellants to reverse the decree.

It is apparent that, at the time of the settlement, the

$16,000 which had been borrowed by the parties to make the first payment on the land had not been paid or canceled.

And it is conceded, that $4000 of this indebtedness was due to the German-American Bank, and $5000 to Henry Clews & Co.; but it is said the other $7000 was due to the Union National Bank of Chicago. It is immaterial who held the demands against the parties at the time the accounting was had, if, in the settlement, Colehour assumed to pay $5000 of the $16,000 outstanding, and Grant & McLain agreed to pay $7000, leaving the $4000 to be provided for out of the property held jointly by the two. It is a matter of no importance, so far as the rights of the parties are concerned, whether Henry Clews & Co., at that time, had $12,000 or only $5000. The main point is, what portion of the $16,000 was to be paid by Colehour, and what amount by Grant & McLain.

We are satisfied, from the evidence, that at the date of the settlement, the $7000 was due the Union National Bank, but immediately after the settlement, Grant and Colehour went to New York, and in the early part of October the $7000 was obtained of Henry Clews & Co., and the Union National Bank paid off. Then the claim of Henry Clews & Co. was $12,000.

Orville L. Grant, in his evidence, expressly says, in the settlement, Grant & McLain were to pay the $7000, and Colehour was to pay the $5000.

McLain testified that the $7000 borrowed of the Union National Bank was their proportion to pay, and the $5000 Colehour obtained of Henry Clews & Co. was his proportion, and there was borrowed of the German-American Bank $4000, on joint account.

In addition to this evidence, it appears that Colehour repeatedly acknowledged and recognized his liability to pay the $5000, while Grant & McLain were to pay the $7000. Upon this point, the evidence all points in one direction—so clearly so that the court could not reasonably arrive at any other conclusion.

If the court was correct, therefore, in its conclusion, that in the settlement the $5000 was to be paid by Colehour, and the

$7000 by Grant & McLain, and upon this we do not entertain a doubt, then the decree rendered follows as a natural result.

It is also claimed the court erred in refusing to allow W. H. Colehour ten per cent on the net profits, and two and one-half per cent on sales, for holding the title in his name and assuming responsibility, etc.

In the settlement made, C. W. Colehour was allowed two and one-half per cent on the sale of the forty-acre tract, and the court allowed five per cent·on the sale of the twenty-acre tract.

The preponderance of the evidence fails to show any agreement under which the claim made can be sustained, and after the liberal allowance which has been made, we fail to see any ground for complaint.

It is also urged, the decree is erroneous in requiring the surrender of the notes held for the twenty-acre tract by C. W. Colehour, while Grant & McLain are indebted to Henry Clews & Co., which is secured by the indorsement of Colehour, as Grant & McLain are insolvent.

The court, however, in the decree, required Colehour to give bond and security, conditioned to save Grant & McLain harmless from any liability to Henry Clews & Co. or their assigns, in respect to said two notes of $7000 and $5000, respectively, in excess of the principal sum of $7000 and interest, and that complainant give bond with security, conditioned to save Colehour harmless from liability in respect to said two notes, in excess of the principal sum of $5000 and interest.

This provision of the decree will, no doubt, be enforced by the court before the notes are surrendered, which will afford ample protection to each of the parties.

We perceive no error in the decree, and it will be affirmed.

*Decree affirmed.*